UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    - v. -

RUBEN PATTERSON,

           Defendant.

21-cr-603 (VEC)

---

**SENTENCING MEMORANDUM ON BEHALF OF RUBEN PATTERSON**

 

Lawrence Gerschwer
Barnes & Thornburg LLP
390 Madison Avenue, Fl 12
New York, NY 10017
(646) 746-2022 (Telephone)
(646) 746-2001 (Facsimile)
Lawrence.Gerschwer@btlaw.com

*Attorney for Ruben Patterson*

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

RUBEN'S BACKGROUND ....................................................................................................... 3

SENTENCING DISCUSSION .................................................................................................... 5

    I.    The Guidelines Calculation and Presentence Report ................................................ 5

    II.    A Non-Custodial Sentence Is Just And Appropriate ................................................ 6

        A.    The Nature and Circumstances of the Offense ............................................. 7

        B.    Ruben's Acceptance of Responsibility .......................................................... 7

        C.    The Need to Avoid Unwarranted Sentencing Disparities ............................. 8

CONCLUSION ............................................................................................................................ 8

## TABLE OF AUTHORITY

**Cases** **Page(s)**

*United States v. Booker*, 543 U.S. 220 (2005) ............................................................................... 6

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ..................................................................... 6

**PRELIMINARY STATEMENT**

This memorandum is submitted on behalf of Ruben Patterson, who is scheduled to be sentenced by Your Honor on February 28, 2023. For the reasons set forth below, we respectfully submit that the Court should impose a sentence of time served, to be followed by three years of supervised release, as recommended by U.S. Probation. We also understand that the Government intends to recommend a below guidelines sentence for Ruben.

On September 30, 2022, Ruben pleaded guilty to conspiracy to commit healthcare fraud in violation of 18 USC § 1349. But Ruben took full responsibility for his participation in this offense long before entering his plea. On October 7, 2021, the date of his arrest, Ruben immediately confessed to the FBI agents and offered to assist in the Government's investigation. On October 29, 2021, the day after he appeared before Your Honor at the first pretrial conference, Ruben met with the Government for several hours. During that proffer, Ruben acknowledged, and provided details about, his conduct, and he provided as much detail about the scheme as he could. On February 2 and 23, 2022, Ruben provided additional proffers during which he again truthfully answered all questions put to him. The Government has acknowledged that, during all of these meetings, Ruben provided truthful and helpful information.

Ruben Patterson is a decent man who has overcome substantial obstacles to achieve success – principally as an NBA player. As discussed in more detail below, Ruben grew up under exceedingly difficult circumstances. Ruben's father was a crack addict who physically and emotionally abused his family, and who spent his money on his addiction rather than to provide a decent life for his children. As a result, at a young age Ruben worked at various jobs to help fill the void and support the family. Unfortunately, in his early teens Ruben began drinking, as well

as using and selling drugs. He also neglected his schoolwork, which eventually led to him failing to graduate from High School. By the age of 14, Ruben was headed down a dangerous path.

Despite all that -- and due in no small part to his natural abilities to play basketball and the intervention of a coach who became a father figure to him -- Ruben was given the opportunity to get back on track and pursue an education and a career. Ruben made the most of those opportunities: He obtained his GED, attended Junior College, matriculated at the University of Cincinnati, and went on to have a successful, and lucrative, NBA career.

But Ruben's good fortune was all but extinguished when his business manager defrauded him of his substantial NBA earnings, leaving Ruben susceptible to being recruited into the conspiracy to which he has pleaded guilty. While it in no way excuses his actions, Ruben's participation in this offense is the direct result of that fraud. Ruben found himself broke and unable to make the child support payments that he believed had been paid by his business manager out of Ruben's funds. For a period of time, Ruben was homeless. To this day, Ruben is suffering from the realization that he was betrayed by someone he trusted, and he is in litigation against his former business manager to recover at least a portion of the funds that were misappropriated.

Despite all of that, Ruben is a decent person with a good heart. He made a terrible mistake getting involved in the instant offense, and he quickly acknowledged his guilt and tried to do what he could to make amends. Ruben is described by his fiancé as "loving, caring, giving, and a respectable human being," and he is a supportive father figure to her three children. (PSR at ¶¶ 207-8).

We therefore submit that, under the factors in 18 U.S.C. § 3553(a), a sentence of time served and a period of supervised release of three years would be sufficient, but not greater than necessary, to satisfy the objectives of sentencing in Ruben's case.

2

## RUBEN'S BACKGROUND

Ruben Patterson was born on July 31, 1975, in Cleveland, Ohio, to Ruben McEwen and Charlene Patterson. He has two siblings, a sister named Latrina Patterson, now 52, and a brother named Rashad McEwen, now 34.

Ruben and his siblings had a difficult childhood growing up in inner city Cleveland. Ruben's father was a crack addict who spent whatever money he could get on drugs. Ruben vividly remembers coming home from school to find that the electricity and water were shut off for non-payment, and seeing roaches and rats in his childhood homes. Moreover, Ruben's father violently abused Ruben's mother to the point where Ruben and his sister would jump on their father to try to prevent him from seriously harming her. Ruben's father would then beat the children. When Ruben was 12 years, his father stabbed him with a pair of scissors.

Unsurprisingly, Ruben's parents were divorced. While his mother worked hard to provide for the family, Ruben began working at the age of 13 doing odd jobs in the neighborhood to help with the difficult financial situation. Unfortunately, at that time Ruben also resorted to selling marijuana and crack cocaine. Before he was 14 years old, Ruben was also using alcohol and marijuana.

But Ruben found a positive influence in his life when Hal Ehretsman recruited him to play for his Amateur Athletic Union (AAU) basketball team. Mr. Ehretsman saw a lot of good in Ruben -- he describes Ruben as "a terrific young man, who has been through some tough times growing up" (PSR at ¶ 215) -- and he took Ruben under his wing. Mr. Ehretsman provided financial assistance to Ruben and his mother, bought Ruben food and clothing, and even provided spending money. When Ruben failed to graduate from High School, Mr. Ehrestman helped him to earn his GED and enroll at Independence Community College, where Ruben continued to play basketball.

After a successful career there, Ruben was able to transfer to the University of Cincinnati, where he played Division I basketball for Hall of Fame Coach Bob Huggins.

In 1998, Ruben was drafted into the NBA by the Los Angeles Lakers. He played for the Lakers during the 1998-1999 season, and was then traded to the Seattle Supersonics, where he played from 1999 until 2001. In 2001, the Supersonics traded Ruben to the Portland Trailblazers, where he played until 2006, when Portland traded him to the Denver Nuggets. Between 2006 and 2008 Ruben played for the Nuggets, Milwaukee Bucks, and Los Angeles Clippers. In 2009, after his NBA career ended, Ruben tried to play overseas, but he was homesick and returned to the U.S.

Ruben's NBA career was lucrative: In 2001, the Portland Trailblazers signed him to a six-year, $38 million contract. Unfortunately, Ruben placed his trust in an older man who was from the same area in Cleveland and had gone to the same High School as Ruben, and who had played football in the NFL. Ruben looked up to and trusted this man, whom he hired as his business manager, giving him control of Ruben's finances. Tragically, Ruben's business manager betrayed Ruben's trust, and over a period of several years he defrauded Ruben out of millions of dollars from his NBA playing days, leaving Ruben broke. He had also failed to use Ruben's money to pay Ruben's child support obligations, which was personally painful and also put Ruben in legal jeopardy.

In short time, Ruben went from being a self-made millionaire living in his $2 million "dream house," to being essentially homeless. From approximately 2011 to 2015, Ruben lived at hotels, homes of various friends, and at times in his truck. (PSR at ¶ 214). He then moved around in search of jobs, for a time living in Jacksonville, Florida where he worked as a car salesman.

During these tough years, starting in about 2017, Ruben also played in the Big3 Basketball League, where he was paid by $9,000 per game, but given few opportunities to play. (PSR at ¶¶

4

233-34). It was at the Big3 tryouts in 2018 that Terrence Williams approached Ruben about this scheme. Williams was clearly aware of Ruben's financial difficulties, and said he had a "legit" way to get Ruben some money. Williams told Ruben that the money in the Plan was "our money." When Ruben realized that this would involve using false documents, he knew it was wrong, and to his great regret, he participated anyway.

Now, Ruben has another chance. He recently relocated to Charlotte, North Carolina, where he has secured a job coaching youth basketball players. Obviously, Ruben is in a select fraternity of people who have made it to the National Basketball Association. On top of that, Ruben was drafted to the Los Angeles Lakers, and he played with and against some of the most legendary players of all time, including Shaquille O'Neal and Kobe Bryant. Ruben is therefore in a position to use his personal life experiences -- good and bad -- to mentor young, aspiring players, and to help them avoid making the same mistakes he has made. This "next act" for Ruben is now underway. Ruben hopes to avoid a prison sentence in part so that he can pursue this opportunity and go back to living a productive life.

## SENTENCING DISCUSSION

I.  **The Guidelines Calculation and Presentence Report**

Pursuant to a plea agreement, Ruben pleaded guilty to the lesser included offense of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. The parties have stipulated to a Guidelines offense level of 13 and Criminal History Category I, which yields an advisory Guidelines range of 12 to 18 months' imprisonment. The Probation Department calculated that Ruben is in Criminal History Category II, which yields an advisory range of 15 to 21 months' imprisonment. However, the Government has agreed to recommend a below Guidelines Sentence for Ruben. And the Probation Department has specifically recommended a sentence of time served to be followed by three years of supervised release, noting that "it appears

that Patterson played a lesser role in the offense and his conduct consisted of a total of four fraudulent submissions. Moreover, the defendant was not a leader in the offense, had no decision-making authority." In recommending a time served sentence, Probation also noted that "[w]hile on pretrial supervision, Patterson has been cooperative and abided by his bail conditions." The PSR also cites Ruben's "pending employment opportunity" as a reason to impose a time served sentence.

II.     **A Non-Custodial Sentence Is Just And Appropriate**

The Guidelines are advisory, and a sentencing court may impose a sentence outside of the Guidelines in light of the sentencing factors in Section 3553(a). *United States v. Booker*, 543 U.S. 220 (2005). Indeed, a sentencing court should not presume that a Guidelines sentence is reasonable, and "must instead conduct its own independent review of the sentencing factors" in determining the appropriate sentence. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

Pursuant to 18 U.S.C. § 3553(a), the appropriate sentences should be "sufficient, but not greater than necessary…." to accomplish the goals of sentencing. 18 U.S.C. § 3553(a)(2). In deciding the appropriate sentence, courts should consider the following factors: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

    A.    **The Nature and Circumstances of the Offense**

As noted by Probation, Ruben was not a leader or organizer of the scheme. He did not recruit additional players into the conspiracy. In fact, Ruben's involvement was limited to only four fraudulent submissions. Further, as Ruben discussed with the Government during the proffers, it appears that Terrence Williams repeatedly lied to and threatened Ruben.

Moreover -- as noted earlier here and as Ruben also discussed during his proffers with the Government -- Ruben was susceptible to the approach by Williams because he had been defrauded by his business manager, which caused him to miss child support payments, lose his house and become, for some period of time, homeless. Again, Ruben understands that this does not excuse his decision to engage in the scheme. But it certainly it is relevant as one of the circumstances that led Ruben down this path.

    B.    **Ruben's Acceptance of Responsibility**

Ruben has taken full responsibility for his crime and showed remorse from the time he was arrested, and he has done everything he could to make amends by helping the Government in its investigation:

1. On October 7, 2021, Ruben Patterson confessed to the agents during his arrest and offered to cooperate;

2. On October 29, 2021, while in NYC for the first pretrial conference, Ruben appeared for a several hour proffer during which he provided truthful, accurate and helpful information;

3. On several occasions, Ruben responded to questions from the government through counsel;

4. On February 2, 2022, Ruben again proffered for several hours and provided truthful, helpful information;

7

      5.      On February 23, 2022, Ruben provided a third proffer.

In addition, as noted by Probation, Ruben has been compliant with the terms of his bail conditions. He has also obtained gainful employment that has required him to leave his hometown of Cleveland, but that provides him with gainful employment and offers him the chance to help young basketball players on and off the court.

Ruben regrets his participation in this conspiracy, and he is determined never to be involved in criminal behavior of any kind again.

      C.      **The Need to Avoid Unwarranted Sentencing Disparities**

A sentence of time served, to be followed by three years of supervised release, is also appropriate for Ruben in order to satisfy the goal of avoiding sentencing disparities between similarly situated defendants. To date, five defendants in this case who are similarly situated to Ruben have been sentenced to time served. *See* ECF Nos. 595, 626, 635, 707, 777. Like Ruben, none of these defendants were organizers or leaders of the conspiracy. All pleaded guilty to the same lesser included offense of conspiracy to commit healthcare fraud.

With respect to each of these defendants, the Court viewed their conduct as "aberrational." Although he has prior convictions for unrelated conduct, that is equally true of Ruben, who has never spent substantial time in prison and has never been accused of engaging in any manner of fraud. As noted, Ruben had a difficult life and had issues to manage through. But, as he approaches his 48th birthday, there is no reason to view Ruben as a risk to recidivate.

## CONCLUSION

Ruben is a decent man with a big heart who, despite the hardships he has faced, always sees the best in people. He is neither a hardened criminal nor a risk to recidivate. He has taken responsibility for his actions from day one, practically confessing to the arresting officers as they entered his home. He has been truthful and as helpful as he could during multiple proffer sessions

8

with the Government. He has complied with his bail conditions. And he has pleaded guilty. It would serve no public interest to require Ruben to spend time in jail. We respectfully request that the Court sentence Ruben as recommended by Probation, to time served and three years of supervised release.

Dated: New York, New York
      February 14th, 2023

                                              Respectfully Submitted,

                                              /s/*Lawrence Gerschwer*
                                              Lawrence Gerschwer
                                              Barnes & Thornburg, LLP
                                              390 Madison Avenue, 12th Floor
                                              New York, New York
                                              646-746-2022
                                              Lawrence.Gerschwer@btlaw.com
                                              Attorney for Defendant